## DERRICKSON *v.* CADY.

The statute of limitations begins to run on a claim against an attorney for negligence in releasing tract A., and omitting to revive a judgment to preserve its lien against the same, from the time when the client knew that the attorney had released tract A. from the lien of the judgment.

And where the client, knowing of such release by the attorney, executed a paper stating the judgment, and "in consideration of (the attorney) releasing (the client) from his charges as counsel heretofore, I do hereby release him; and he not to act as counsel for me any further," the claim for negligence is thereby released.

It having been shown that time had been given by the plaintiff to the debtor, and one of his letters on that subject, prior to the release, having been read, subsequent letters on the same subject are evidence as part of a series of letters.

The employment of an attorney, after knowledge of his negligent conduct, is material, and should be submitted to the jury on the question of damages.

In error from the Common Pleas of Crawford.

*Sept.* 30. Case for negligence. The first count was for not reviving a judgment recovered by defendant, as attorney for plaintiffs, against Sexton and Wood, so as to continue the lien against the *terre-tenants* of two lots in Meadville, the property of Sexton and Wood at the time of the recovery of the judgment. The second count was for releasing the two lots from the lien of the judgment, and the third for negligence generally, in and about the said action. Pleas, *non assumpsit*, statute of limitations, and accord and satisfaction.

The judgment in question had been recovered in 1835, for $1335. On the 31st of January, 1838, defendant, as attorney, released the lien on two lots in Meadville, and extended the time of payment. Sexton and Wood agreeing, in consideration thereof, to waive condemnation on executions. Proceedings were to be stayed until June; if $600 were then paid, a further stay until Oct. 20; if $400 were then paid, a further stay for the balance to June 1, 1838, was to be had. Under this agreement, the judgment was revived. It was proved that Sexton was bail for Wood, and the property released had been sold by him, but the agreement could not be complied with in consequence of this lien. To enable him to complete the purchase, the release was executed, Sexton agreeing to pay $100 out of the purchase-money, which was to be $2000, towards the judgment against himself and Wood.

The correspondence was read by each of the parties, the plaintiff residing in Massachusetts or New York. From these letters, the following extracts are taken: January 7, 1837—Derrickson to

Cady, objecting to a plan proposed by Cady, as it would release part of the property. July 6, 1837—Cady to Derrickson, directing him in no case to release any security until final payment; but if certain payments were made, he might release Sexton individually, whatever he thought reasonable. August 11, 1837—Derrickson to Cady, referring to a letter received. From its tenor, " I infer that the whole has been left for me to regulate, which I wish to have safely done on your account. I will inform Sexton of the sum you require for the release of the Meadville house." The letter also mentioned the inability of Sexton to comply with his bargain, in consequence of the lien. January 3, 1838—Derrickson to Cady, stating Sexton's anxiety to obtain a release, in order to get his money; and suggesting, if the residue of the property was sufficient to secure the judgment, and they would give condemnation, and insure $500 on the 1st of June, and the balance in the spring and fall, it would be well to go into the measure; requesting an answer and authority to act as he should deem best for Cady's interests. On the 12th, Cady replied, saying, he saw no reason why he should release without " some pay ;" that he considered the Meadville property the best security; that all the land was now bound, and holding on to that in Meadville might enforce an earlier payment or settlement much desired. " Above are my feelings at present, *but I leave the whole matter with you,* trusting in your honour and judgment that my interests are not jeoparded." It will be observed, the release followed this letter. On the 1st of February, the day after the release, Derrickson wrote Cady, stating the whole of the arrangement above mentioned, *except the partial release of the lien.* On the 7th, Cady replied, requiring punctuality in Wood. In June and December, the letters showed $70 were received from Sexton, and paid over, and in August, $300 from Wood. On the 23d of April, 1839, Cady wrote Derrickson, " I have ever been sorry that you have relinquished the lien on Sexton's property in the village ;" when he first learned it did not appear. This action was to August 9, 1845, which was more than six years after this letter. The letters to Derrickson, as attorney in the business, were continued through 1841.

Wood, one of the defendants in the judgment out of which the controversy arose, stated, that when pressed for money by Derrickson, he frequently wrote to Cady, and obtained indulgence. One of the letters from Cady to Wood, in 1838, was read, expressing a hope that he would help him to $200 that fall. Two similar letters, in 1841 and 1842, were rejected; they stated that Cady was much

pressed, and asking when Wood could let him have certain sums; saying he must let him have certain sums at certain times.

The defendant also gave in evidence the following instrument, signed by plaintiff on the 31st of December, 1842:

"Cady *v.* Wood and Sexton. Judgments in Common Pleas of Crawford county.—In consideration of D. Derrickson releasing me from his charges as counsel for me heretofore in the above cases, I do hereby release him; and he not to act as counsel for me any further, unless employed again."

He further gave evidence that, besides the property released, Wood and Sexton owned real estate valued at $2000; that plaintiff had proceeded on that judgment, having employed another attorney after the release, and sold the property appraised by the jury at $1900, and that one lot, valued at $1250, was purchased at $155 by the plaintiff.

CHURCH, P. J., instructed the jury, that the liability commenced from the expiration of the lien in 1840. The release was ineffectual to destroy the lien unless the attorney had special authority, hence the statute of limitations had not much to do with the case. That where the matter is left to the attorney's discretion, but so as not to prejudice, he takes the risk and responsibility on himself, in the absence of any thing else. That the release by plaintiff to defendant did not extend to past transactions, but rather to his responsibility to proceed further.

The rejection of the two letters, the charge as to the liability of defendant, and the effect of the statute of limitations and release, and the omission to notice the conduct of Cady in giving time, and continuing to employ defendant after knowledge of the circumstances, were the material errors assigned. On the last point, there was a prayer for instructions, that if plaintiff intended to hold defendant liable, he should have so informed him at the dissolution of the relation of counsel and client, and not wait until the depreciation of property had disabled him from securing himself, which point was negatived by the court.

*Riddle* and *Farrelly*, for plaintiff in error.—The discretionary power of an attorney is much greater in this state than in England; and having, as it were, a general power to act for the best interests of his clients, his acts, if they in any way differ from what is deemed beneficial, must be immediately objected to, that he may repair the fault as he best can. This, indeed, is but the rule in all cases of

c 2

agency. Harper *v.* Kean, 11 Serg. & Rawle, 280; La Farge *v.* Kneeland, 7 Cowen, 456; Geyer *v.* Decker, 1 Yeates, 486; Tuttle *v.* Cook, 15 Wend. 274; Towle *v.* Stevenson, 1 Johns. Cas. 110; Codwise *v.* Hacker, 1 Caines' R. 536; Courcier *v.* Ritter, 4 Wash. C. C. Rep. 551; Richmond Manufacturing Company *v.* Starks, 4 Mason, 296; Bredin *v.* Dubarry, 14 Serg. & Rawle, 27.

There was ample proof that the defendant acted in good faith, and, as he supposed, for the best interests of plaintiff. The remaining real estate was to every appearance ample to secure the debt, and, by effecting the arrangement, he supposed he secured a more speedy payment, and obtained cash, instead of being obliged to buy the property at sheriff's sale. There was therefore a fair question for the jury, whether the act was not a proper one, under the circumstances. The court, however, certainly erred on the question of the statute of limitations; for that began to run from the knowledge of the act done from which the mischief ensued: Stafford *v.* Richardson, 15 Wend. 302; Lyon *v.* Marcley, 1 Watts, 275; Finney *v.* Cochran, 1 Watts & Serg. 118; Robinson *v.* Hook, 4 Mason, 139; Wisner *v.* Ogden, 4 Wash. C. C. Rep. 631, 20 Johns. 33, 48, 278; Alexander *v.* Westmoreland Bank, 1 Barr, 395.

The release was mutual, and covered this or nothing. For the responsibility to act in future, which was supposed by the court to be meant, was provided for in a subsequent clause. What, then, could it mean, but past acts? The rule that the words are to be taken most strongly against the releasor applies here with full force: Jackson *v.* Gardner, 8 Johns. 406; Jackson *v.* Blodget, 16 Johns. 172; Roth *v.* Miller, 15 Serg. & Rawle, 107.

The compromise of a doubtful claim was a sufficient consideration for the release, though but by parol: Brown *v.* Sloan, 6 Watts, 421; Rice *v.* Bixler, 1 Watts & Serg. 445; Perkins *v.* Gay, 3 Serg. & Rawle, 331.

There was no question of fraud in this case; and the court below ought to have submitted that to the jury, and that Cady did not seek to recover any thing from Derrickson, until all the property of Woods and Sexton had been sacrificed, and Derrickson was deprived of any means of protecting himself.

*Galbraith,* contrà.—There is nothing in Cady's letters to Wood that shows he had taken the business out of Derrickson's hands, or had given any indulgence to the defendants in his judgment. The rejected letters were therefore not evidence on that ground.

The statute of limitations does not begin to run against an attor-

ney until the relation of attorney and client has been dissolved: Foster v. Jack, 4 Watts, 334.

The statute would not run until the expiration of the five years the judgment, released by·Derrickson, had to run; Derrickson having that time to repair the injury he had done.

The relations of principal and factor do not apply to attorney and client: Riddle v. Poorman, 3 Penna. Rep. 224; Cox v. Livingston, 2 Watts & Serg. 103.

A party who has neglected to do his duty is not entitled to notice to that effect from his employer.

Oct. 7. Burnside, J.—Several of the errors were abandoned in this court. Those principally insisted on will be considered.

1. In rejecting the two letters of the plaintiff to Wood. We think they ought to have been received; they were a part of the series. If a plaintiff will give time, and agree to receive partial payments from his debtor, it is surely pertinent evidence for his counsel, where he charges him with a want of diligence and neglect of his duty.

2. The defendant had pleaded the statute of limitations. It was pressed on the court, who determined that the statute of limitations did not begin to run in favour of the defendant until the dissolution of the *relation of counsel and client*, on the 31st of December, 1842, and that the statute would not avail as a defence. In this we think there was manifest error. It was not a trust that would be excluded from the operation of the statute. Trusts which are not affected by the statute of limitations, are those technical and continuing trusts which are not cognisable at law, but fall within the proper and exclusive jurisdiction of a court of equity: Finney v. Cochran, 1 Watts & Serg. 112. I agree that fraud will prevent the statute from running; but it is well settled that the statute will commence to run after the discovery of the fraud, or the discovery of facts imputed as fraud: Rush v. Barr, 1 Watts, 120, 7 Johns. Ch. 90, 122. In New York, it was held, that the action must be brought against the attorney for money collected within six years after he received it, or the plaintiff will be barred by the statute: and the doctrine that a trustee cannot plead the statute, does not apply to such a case: Stafford v. Richardson, 15 Wend. 302. The Pennsylvania rule, I take it, would be, for the statute to begin to run from the time the client had notice of the attorney's receipt of the money. The English rule, in actions on the case for negligence, where the declaration alleges a breach of duty, and

a special consequential damage, the cause of action is the breach of duty and not the consequential damage; and the statute runs from the time when the breach of duty is committed, and not from the time the consequential damage accrued : Howell *v.* Young, 8 Dowl. & Ry. 14, 5 Barn. & Cress. 259. So in an action of assumpsit for not laying out the plaintiff's money in an annuity, or a good and sufficient security, which the defendant promised to do; held, that the statute of limitations was a good bar to the plaintiff's recovery, as the promise of the defendant was the gist of the action, although it was commenced within the period of six years from the time it was discovered that the security was invalid, and the defendant knew it to be so at the time the annuity was granted : Brown *v.* Howard, 4 Moore, 508, 2 Brod. & Bing. 73. The suggestion of an arrangement with the defendants, indeed, of the release, first came from the plaintiff, as appears by the defendant's letter to the plaintiff of the 7th of January, 1837. The release of the Meadville lots was on the 31st of January, 1838. On the 1st of February following, the defendant wrote to the plaintiff that he had got matters arranged with Wood and Sexton; he mentioned the agreement of condemnation and the arrangement of payment, but said nothing about the release. He ought to have stated the whole arrangement. But on the 23d of April, 1839, the plaintiff wrote to the defendant, "I have ever been sorry that you have relinquished the Sexton property in your village." At this time, the plaintiff had full knowledge of the release. He does not bring his action until August Term, 1845, more than six years after he had full knowledge that the Sexton lots had been released. We are unanimously of opinion, that the statute of limitations not only operates in this case, but that it is a bar to the plaintiff's action and right to recover.

3. On the 31st December, 1842, the parties came to an arrangement, which resulted in a mutual release. There is no evidence on that subject, except the paper signed by the plaintiff, viz. :

"A. Cady          )  Judgment in the Common Pleas of Craw-
    *v.*             )
"L. Wood and R. Sexton. )          ford County.

"In consideration of David Derrickson releasing me from his charges as counsel for me heretofore, I do hereby release him ; and he not to act as counsel for me any further, unless employed again.

"December 31, 1842.                    Asa Cady."

The court claimed the exclusive right to declare the legal effect and operation of this paper, and instructed the jury that it did not

embrace the present controversy; in this case it formed no defence. What, then, did it embrace? Here was a misunderstanding between the attorney and his client. The former alleging that he had general discretionary powers, and that he had exercised his best judgment and abilities in the case. The latter denying this, and complaining of the unfortunate release of the Meadville lots, executed more than two years before. There is not an allegation in the paper book of any other point of dissatisfaction. The attorney releases his client from his charges as counsel; and for that consideration, *the client releases him,* from what? Why in the case stated in the release; and he is no longer to act as his attorney in the case. As there was no ground of complaint but the one between the parties, and the case of Cady *v.* Wood and Sexton, stated in their mutual release, it could relate to no other matter. We all think it embraced this case, and no other; no other is mentioned or alluded to in the paper; and so the jury ought to have been instructed.

4. There is but another point in the errors assigned that I deem of any general importance, or worthy of being mentioned. When Cady discovered, in the beginning of the year 1839, that his attorney had released the Meadville lots from the lien of his judgment, in consideration of getting a condemnation on the other parts of his debtor's estate, and an engagement to make certain payments by, on, or before a fixed period, or an execution might issue; if he meant to disregard this arrangement, and look to the attorney for the payment of the debt, he ought to have so intimated to his attorney: instead of such an intimation, he continues him as his attorney for more than two years longer, then settles with him, obtains a release of his fees, and employs another, proceeds to sell the estate of Wood and Sexton, which had been condemned, purchases it in part for his own use, and after all this, institutes this action for the balance he did not realize from the sales. We do not say the want of notice is a legal bar to the plaintiff's right of recovery in this action, but it was unquestionably a part of the case, on which the jury ought to have been instructed on the question of damages.

Judgment reversed.